## Paul Kashgarian et al., Appellees, v. Pomneomian Janjigian, Appellant.

### Gen. No. 5418.

1. EVIDENCE—*when secondary competent.* Upon proof of the loss of an original letter oral evidence as to the contents thereof is competent.

2. ASSUMPSIT—*when lies.* If the payment of money has been obtained by false pretenses assumpsit lies to recover it back.

Action commenced before justice of the peace. Appeal from the Circuit Court of Lake county; the Hon. CHARLES H. DONNELLY, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed March 16, 1911.

ANDERSON & EATON and CHARLES H. KING, for appellant.

CLAIRE C. EDWARDS, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

The parties are Armenians. Paul Kashgarian works in the mills at Waukegan. His brother, Peter, travels through the country selling Turkish rugs. Pomneomian Janjigian lives in Boston and acts as money broker and collecting agent for his countrymen. In 1905, in answer to a letter from Janjigian Paul sent him a sum of money and then forwarded the letter to Peter, who sent Janjigian another sum of money. Afterwards Paul and Peter claimed to have been deceived in the purpose for which the money was asked. Peter visited Janjigian in Boston, and claims that he then demanded back the money they had each paid and that Janjigian refused to refund. Thereafter the brothers sued Janjigian in attachment before a justice in Lake county. Janjigian appeared by attorney, and on an appeal to the Circuit Court the brothers had a

judgment against Janjigian for $135, from which he prosecutes this appeal. The argument confines the grounds relied upon for reversal to three: (1) That Paul and Peter have no joint right of action; (2) that the court erred in admitting oral proof of the contents of a certain letter; and (3) that there is no preponderance of evidence that a cause of action exists.

When all the evidence in the record is carefully read we conclude that it shows that Paul and Peter pooled all their earnings, except what they paid out for their living expenses, and put it all into the rug business, and that it was their plan that as soon as the business was sufficiently lucrative Paul should leave the mills and devote his time to the rug business. We conclude that they were joint owners of all their moneys. If the evidence they gave is true, both remittances were intended by them to be concerning the rug business. We conclude they had a joint right of action for the money if it was wrongfully obtained from them.

The rugs which were to be sold in America by Peter were purchased in Turkey by their agents and sometimes by their father. Their agent would then draw a draft upon them for the purchase price for the rugs. Often these drafts were sent for collection to an Armenian broker in New York, but sometimes they were sent to appellant in Boston, and Paul and Peter had several times remitted to appellant the amounts of drafts drawn upon them. In 1905 they received a letter from appellant. They could not produce the letter. Peter testified that he had that letter and other papers pertaining to this case, including an express receipt, in a suit case, and while on the way to Boston with them he stopped to concern himself about the affairs of some emigrant countrymen of his who were being deported by ship; that the ship was much crowded and he left his suit case for a short time in the custody of a countryman whom he knew, and the countryman disappeared, and he never saw the suit

case nor letter again. We conclude that this authorized the admission of secondary evidence of the contents of the letter. The proof for appellees was that the letter told them that appellant held a draft against them from the old country, the amount of which in American money was $121.50. They assumed that this draft was for rugs shipped to them, like the other drafts which they had paid, and accordingly Paul remitted to appellant one sum and Peter the rest of the amount necessary to make $121.50. They received no draft therefor from appellant, and finally learned from him that it was not a draft at all, but a note which the father of appellees had given to the father of appellant in Armenia some seven or eight years before, and on which they were not liable at all. Peter then visited Boston and demanded the return of the money and it was refused.

Appellant on the other hand testified (by deposition) that in his original letter he told them that this was a note of their father, and that he did not send the note to them because they did not pay the interest, but refused to do so, and he therefore returned the note to the old country; that when Paul visited him in Boston Peter said that they paid the principal of the note for their father because he was sick, but they would not pay any interest. This contradictory evidence raised a disputed question of fact which the jury and the trial judge have determined in favor of appellees. If the testimony given by appellees is true, then appellant wrote them that he had a draft on them, and they remitted the money in reliance on that statement, and the statement was not true, and the money was applied upon an instrument upon which they were not liable. If these are the facts then, upon learning the truth, they had a right to sue and recover back the money with interest.

The judgment is affirmed.

*Affirmed.*